No. 19-7132

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

CHRISTIANA TAH AND RANDOLPH MCCLAIN,
*Plaintiff-Appellants-Cross-Appellees*,

V.

GLOBAL WITNESS PUBLISHING, INC., AND GLOBAL WITNESS,
*Defendants-Appellees-Cross-Appellants*.

_____

On Appeal from the
United States District Court for the District of Columbia
No. 19-cv-2514 (Hon. Rudolph Contreras)

_____

# BRIEF OF AMICI CURIAE THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 26 MEDIA ORGANIZATIONS IN SUPPORT OF APPELLEES-CROSS-APPELLANTS SEEKING REVERSAL IN PART

_____

Bruce D. Brown, Esq.
*Counsel of Record*
Katie Townsend, Esq.
Caitlin Vogus, Esq. *
William Powell, Esq.*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1020
Washington, D.C. 20005
(202) 795-9300
bbrown@rcfp.org
*Of counsel

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES
PURSUANT TO CIRCUIT RULE 28(a)(1)**

A.      <u>Parties and amici curiae</u>

Except for the following amici, all parties, intervenors, and amici appearing before the district court and in this Court are listed in Appellees-Cross-Appellants' brief:  Reporters Committee for Freedom of the Press, The Associated Press, Atlantic Media, Inc., BuzzFeed, Committee to Protect Journalists, The Daily Beast Company LLC, The E.W. Scripps Company, Fox Television Stations, LLC, Gannett Co., Inc., Guardian News & Media Limited, Hearst Corporation, Inter American Press Association, International Documentary Assn., Investigative Reporting Workshop at American University, The Media Institute, Mother Jones, MPA - The Association of Magazine Media, National Press Photographers Association, The New York Times Company, The News Leaders Association, POLITICO LLC, Reveal from The Center for Investigative Reporting, Society of Environmental Journalists, Society of Professional Journalists, Tully Center for Free Speech, Vox Media, LLC, and The Washington Post.

B.      <u>Rulings under review</u>

References to the rulings at issue appear in Appellees-Cross-Appellants' brief.

i

## C. Related cases

*Arpaio v. Zucker*, No. 18-cv-2894, 2019 U.S. Dist. LEXIS 189291, (D.D.C. Oct. 31, 2019);

*Akhmetshin v. Browder*, No. 18-cv-1638, 2019 U.S. Dist. LEXIS 157802, (D.D.C. Sept. 16, 2019), appeal pending, No. 19-7129 (D.C. Cir.);

*Arpaio v. Cottle*, No. 18-cv-02387, 2019 U.S. Dist. LEXIS 134604, 2019 WL 3767104 (D.D.C. Aug. 9, 2019);

*Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C. 2019);

*Fridman v. Bean LLC*, No. 17-cv-2041, 2019 U.S. Dist. LEXIS 7874 (D.D.C. Jan. 15, 2019);

*Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158 (D.D.C. 2018);

*Fairbanks v. Roller*, 314 F. Supp. 3d 85 (D.D.C. 2018);

*Libre by Nexus v. BuzzFeed, Inc.*, 311 F. Supp. 3d 149 (D.D.C. 2018);

*Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109 (D.D.C. 2018); and

*Deripaska v. Associated Press*, 282 F. Supp. 3d 133 (D.D.C. 2017), *appeal dismissed*, No. 17-7164 (D.C. Cir. Dec. 8, 2017).

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, the Reporters Committee for Freedom of the Press certifies that it is an unincorporated association of reporters and editors with no parent corporation and no stock.

The Associated Press is a global news agency organized as a mutual news cooperative under the New York Not-For-Profit Corporation law. It is not publicly traded.

Atlantic Media, Inc. is a privately held, integrated media company, and no publicly held corporation owns 10% or more of its stock.

BuzzFeed Inc. is a privately owned company, and National Broadcasting Company (NBC) owns 10% or more of its stock.

The Committee to Protect Journalists is a nonprofit organization no parent corporation and no stock.

The Daily Beast Company LLC is a wholly-owned indirect subsidiary of IAC/InterActiveCorp, a publicly traded company.

The E.W. Scripps Company is a publicly traded company with no parent company. No individual stockholder owns more than 10% of its stock.

Fox Television Stations, LLC (FTS) is an indirect subsidiary of Fox Corporation, a publicly held company. No other publicly held company owns 10% or more of the stock of Fox Corporation.

Gannett Co., Inc. is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. BlackRock, Inc. and the Vanguard Group, Inc. each own ten percent or more of the stock of Gannett Co., Inc.

Guardian News & Media Limited is a private company and issues no stock. It is owned by Guardian Media Group.

Hearst Corporation is privately held and no publicly held corporation owns 10% or more of Hearst Corporation.

The Inter American Press Association (IAPA) is a not-for-profit organization with no corporate owners.

The International Documentary Association is an not-for-profit organization with no parent corporation and no stock.

The Investigative Reporting Workshop is a privately funded, nonprofit news organization based at the American University School of Communication in Washington. It issues no stock.

The Media Institute is a 501(c)(3) non-stock corporation with no parent corporation.

iv

The Foundation for National Progress, dba Mother Jones, is a nonprofit, public benefit corporation. It has no publicly-held shares.

MPA - The Association of Magazine Media has no parent companies, and no publicly held company owns more than 10% of its stock.

National Press Photographers Association is a 501(c)(6) nonprofit organization with no parent company. It issues no stock and does not own any of the party's or amicus' stock.

The New York Times Company is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. No publicly held company owns 10% or more of its stock.

The News Leaders Association has no parent corporation and does not issue any stock.

POLITICO LLC's parent corporation is Capitol News Company. No publicly held corporation owns 10% or more of POLITICO LLC's stock.

Reveal from The Center for Investigative Reporting is a California non-profit public benefit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

The Society of Environmental Journalists is a 501(c)(3) non-profit educational organization.  It has no parent corporation and issues no stock.

Society of Professional Journalists is a non-stock corporation with no parent company.

The Tully Center for Free Speech is a subsidiary of Syracuse University.

Vox Media, LLC has no parent corporation. NBCUniversal Media, LLC, a publicly held corporation, owns at least 10% of Vox's stock.

WP Company LLC d/b/a The Washington Post is a wholly-owned subsidiary of Nash Holdings LLC, a holding company owned by Jeffrey P. Bezos. WP Company LLC and Nash Holdings LLC are both privately held companies with no securities in the hands of the public.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. viii

GLOSSARY ..................................................................................................... xi

IDENTITY OF AMICI CURIAE, THEIR INTEREST IN THE CASE, AND THE SOURCE OF THEIR AUTHORITY TO FILE THIS BRIEF ................................. 1

RULE 29(a)(4)(E) CERTIFICATION ........................................................... 3

CIRCUIT RULE 29(d) CERTIFICATION ..................................................... 3

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 4

ARGUMENT ..................................................................................................... 6

I.  The application of anti-SLAPP laws in federal court protects the exercise of First Amendment rights, including by members of the press. ....................... 6

    A.  The D.C. Council passed the Act to provide substantive protections against frivolous lawsuits aimed at chilling constitutionally protected speech. ................................................................................. 6

    B.  News organizations frequently rely on anti-SLAPP statutes to fight back against meritless litigation filed in retaliation for reporting on matters of public concern. ............................................................................... 9

II.  As interpreted by the D.C. Court of Appeals, the Act should apply in federal court. ..................................................................................... 14

    A.  Because it simply mirrors Rule 56, the Act's special motion to dismiss provision does not conflict with the federal rules. ................................ 17

    B.  The Act's special motion to dismiss provision is substantive under Erie. ................................................................................. 20

CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**CASES**

*Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328
(D.C. Cir. 2015) ...................................................................... 2, 5, 14, 15, 18

*Boley v. Atlantic Monthly Grp.*, 950 F. Supp. 2d 249 (D.D.C. 2013) .................... 11

*CanaRx Servs., Inc. v. LIN Television Corp.*, No. 1:07-cv-1482, 2008 WL 2266348
(S.D. Ind. May 29, 2008) ........................................................................ 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). ...................................... 18, 19

*Competitive Enter. Inst. v. Mann*,
150 A.3d 1213 (D.C. 2016) ......................................... 2, 5, 15, 16, 17, 18, 19, 21

*DC Comics v. P. Pictures Corp.*, 706 F.3d 1009 (9th Cir. 2013) ........................... 9

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1838) ....................................... 14

*Farah v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013) ....................... 7, 11, 12

*Four Navy Seals v. Associated Press*,
413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........................................................ 12

*Fridman v. Bean LLC*, 2019 U.S. Dist. LEXIS 7874
(D.D.C. Jan. 15, 2019) ........................................................................ 21

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996) ............................... 14

*Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) ................................... 20, 22

*Hannah v. Plumer*, 380 U.S. 460 (1965). .................................................... 14

*Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164 (5th Cir. 2009) ................... 7

*Jap Home Sols. v. Lofft Constr., Inc.*, No. 2017-CA-003390-B
(D.C. Super. Ct. Nov. 29, 2017) ............................................................... 10

*Khan v. Orbis Bus. Intel. Ltd.*, No. 2018-CA-002667-B
(D.C. Super. Ct. Aug. 20, 2018) ............................................................... 21

*Moore v. Costa*, No. 2016-CA-4038-B, 2016 WL 8228980
 (D.C. Super. Ct. Dec. 12, 2016) ...................................................... 10, 11

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).......................................... 6, 7

*Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902 (D.C. Cir. 2006)................. 16

*Payne v. D.C. Gov.*, 722 F.3d 345 (D.C. Cir. 2013)............................................... 16

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010).................................... 9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
 559 U.S. 393 (2010) ..................................................................... 14, 17

*Thomas v. L.A. Times Commc'ns LLC*, 45 F. App'x 801 (9th Cir. 2002).............. 12

*TS Media, Inc. v. Pub. Broad. Serv.*, No. 2018-CA-001247-B, 2018 WL 2323233
 (D.C. Super. Ct. May 15, 2018)................................................................ 10

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
 190 F.3d 963 (9th Cir.1999) ................................................................ 22

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) .............................................. 17

*Wash. Post Co. v. Keogh*, 365 F.2d 965 (D.C.Cir.1966)........................................ 7

## STATUTES

D.C. Code § 16-5502 ............................................................... 4, 8, 16, 19, 20

D.C. Code § 16-5504 ........................................................................... 4, 8

## OTHER AUTHORITIES

Council of the D.C. Committee on Public Safety and the Judiciary, Report on Bill
 18-893, Anti-SLAPP Act of 2010 (Nov. 18, 2010).................................... 4, 8, 21

Michael Barthel, *5 Key Takeaways about the State of the News Media in 2018*,
 Pew Res. Ctr. (July 23, 2019), https://perma.cc/DN54-YVEU ............................ 9

**RULES**

Fed. R. Civ. P. 56.................................................................................... 18, 20

# GLOSSARY

"SLAPP" stands for Strategic Lawsuits Against Public Participation.

The "Act" stands for the District of Columbia's Anti-SLAPP Act of 2010, D.C. Code § 16-5501 *et seq*.

"Committee Report" stands for the Report on Bill 18-893, "Anti-SLAPP Act of 2010," Council of the D.C. Committee on Public Safety and the Judiciary (Nov. 18, 2010).

**IDENTITY OF AMICI CURIAE, THEIR INTEREST IN THE CASE, AND THE SOURCE OF THEIR AUTHORITY TO FILE THIS BRIEF**

Amici have obtained consent to file this brief from both parties and therefore may file it pursuant to Federal Rule of Appellate Procedure 29(a)(2) and D.C. Circuit Rule 29(b).

Amici are the Reporters Committee for Freedom of the Press, The Associated Press, Atlantic Media, Inc., BuzzFeed, Committee to Protect Journalists, The Daily Beast Company LLC, The E.W. Scripps Company, Fox Television Stations, LLC, Gannett Co., Inc., Guardian News & Media Limited, Hearst Corporation, Inter American Press Association, International Documentary Assn., Investigative Reporting Workshop at American University, The Media Institute, Mother Jones, MPA - The Association of Magazine Media, National Press Photographers Association, The New York Times Company, The News Leaders Association, POLITICO LLC, Reveal from The Center for Investigative Reporting, Society of Environmental Journalists, Society of Professional Journalists, Tully Center for Free Speech, Vox Media, LLC, and The Washington Post.

Lead amicus the Reporters Committee is an unincorporated nonprofit association of reporters and editors dedicated to defending the First Amendment and newsgathering rights of the news media. Founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of

government subpoenas forcing reporters to name confidential sources, the Reporters Committee today serves as a leading voice for the legal interests of working journalists and news organizations.

As members and representatives of the news media, amici are frequently the targets of strategic lawsuits against public participation ("SLAPPs") designed to punish and deter their constitutionally protected newsgathering and reporting activities. Even with no hope of prevailing on the merits, plaintiffs who file SLAPPs impose costs and discourage the exercise of First Amendment rights. Amici therefore have a strong interest in ensuring that federal courts sitting in diversity properly apply state statutes intended to prevent these frivolous suits from chilling speech. The issue raised by Global Witness Publishing, Inc. and Global Witness ("Global Witness") in their cross-appeal urging the Court to reconsider its rejection of the D.C. Anti-SLAPP Act (the "Act") in *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015), in light of the D.C. Court of Appeals' intervening decision in *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213 (D.C. 2016), therefore has potentially broad ramifications for amici—and for the free exchange of ideas in our democratic society.[1]

---

[1] Amici address only the applicability of the Act in federal courts sitting in diversity. Amici do not discuss the other issues raised in the appeal or cross-appeal, which are fully addressed in Global Witness's brief.

**RULE 29(a)(4)(E) CERTIFICATION**

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici certify that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than amici, its members, or counsel—contributed money that was intended to fund preparing or submitting the brief.

**CIRCUIT RULE 29(d) CERTIFICATION**

Pursuant to D.C. Circuit Rule 29(d), amici certify that this brief is necessary to provide the unique experience and perspective of news media organizations and journalists on the importance of anti-SLAPP protections. Amici are aware of another amicus brief being filed in support of Global Witness on behalf of non-governmental organizations. Amici are not aware of any other amicus briefs being filed on behalf of news media or journalists in this case.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Our system of self-governance depends on open debate among an informed public. But a surge in strategic lawsuits against public participation, or "SLAPPs," threatens the marketplace of ideas. Even when the plaintiffs have little hope of winning on the merits, SLAPPs draw their targets into vexingly time-consuming and costly litigation, thereby deterring valuable speech on matters of public concern. SLAPPs can be particularly damaging to media organizations, diverting their limited resources away from valuable reporting and toward defending against frivolous lawsuits. Such suits chill newsgathering and reporting activities that are essential to informing the public about issues that affect their lives and holding public officials accountable to their constituents. To combat this troubling trend, thirty states and the District of Columbia have passed anti-SLAPP laws.

The D.C. Anti-SLAPP Act (the "Act") seeks to "ensure that District residents are not intimidated or prevented, because of abusive lawsuits, from engaging in political or public policy debates." Council of the D.C. Committee on Public Safety and the Judiciary, Report on Bill 18-893 at 4, Anti-SLAPP Act of 2010 (Nov. 18, 2010) (hereinafter "Committee Report"). It does so through a special motion to dismiss that allows courts to quickly dispose of frivolous suits, D.C. Code § 16-5502, and a fee-shifting provision that covers the costs of defending against a SLAPP, D.C. Code § 16-5504. Fee-shifting is an especially

4

important aspect of anti-SLAPP protections, because it offers the only means of thwarting one of the primary goals of a SLAPP—making the defendant pay for their speech.

In *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) (hereinafter *Abbas II*), this Court held that the Act does not apply in federal court, because the "likely to succeed" standard in the Act's special motion to dismiss provision conflicts with Federal Rules of Civil Procedure 12 and 56. The Court based its decision on its interpretation of the "likely to succeed" standard, which the Court said imposes a standard that is "different from and more difficult for plaintiffs" to meet than the federal summary judgment standard under Rule 56. But in *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213 (D.C. 2016), the D.C. Court of Appeals held that the standard for adjudicating a special motion to dismiss was identical to that of Rule 56. Given that binding change in the interpretation of D.C. law, this Court must reconsider its *Abbas II* decision. As properly interpreted, the Act does not conflict with Rule 12 or Rule 56, is substantive under *Erie*, and therefore applies in federal court.

Anti-SLAPP laws provide essential, substantive protections to speakers, including the news media. Plaintiffs should not be able to skirt these laws simply by filing suit in federal court. SLAPPs pose a serious threat to the exercise of First

Amendment rights, and anti-SLAPP laws must apply in federal court if they are to be an effective defense.

## ARGUMENT

**I.     The application of anti-SLAPP laws in federal court protects the exercise of First Amendment rights, including by members of the press.**

    **A.     The D.C. Council passed the Act to provide substantive protections against frivolous lawsuits aimed at chilling constitutionally protected <u>speech.</u>**

SLAPPs punish and chill constitutionally protected speech.  Even when they fail on the merits, these increasingly common suits can succeed in the goal of imposing exorbitant litigation costs on their targets—citizens who speak out on matters of public concern and the journalists who inform that debate.  Given the financial constraints of many news outlets, SLAPPs can be crippling for media organizations.  And while SLAPPs impose their costs directly on defendants, the chilling effect is far broader.  Would-be speakers are forced into a perverse cost-benefit analysis, weighing the value of participating in the public square against the burden of defending against a lawsuit.  Likewise, fear of SLAPPs hampers the ability of the press to deliver the news, with the specter of frivolous suits hanging ominously over their newsgathering and reporting activities.

The Supreme Court warned of the potential for lawsuits to chill speech in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  Without legal protections, "would-be critics of official conduct may be deterred from voicing their criticism,

even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so." *Id.* at 279. Such self-censorship "dampens the vigor and limits the variety of public debate." *Id.* The Supreme Court recognized that the expense of defending against civil litigation can create a chilling effect on par with that of potential criminal prosecution. *Id.* at 277 ("The fear of damage awards . . . may be markedly more inhibiting than the fear of prosecution under a criminal statute.").

Although *Sullivan* and its progeny reduced the chilling effect of potential damage awards in defamation suits by requiring proof of actual malice in many cases, those protections "have often failed to protect speakers from the similarly-chilling cost and burden of defending such tort claims." *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 167 (5th Cir. 2009). For that reason, this Court has repeatedly acknowledged, in cases involving media defendants, that "summary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (quoting *Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C.Cir.1966)).

In a majority of states as well as the District of Columbia, anti-SLAPP laws fill this void. The D.C. Council recognized that SLAPPs "have been increasingly

utilized . . . as a means to muzzle speech." Committee Report at 1. Such suits "are often without merit, but achieve their filer's intention of punishing or preventing opposing points of view, resulting in a chilling effect on the exercise of constitutionally protected rights." *Id.* In short, "litigation itself is the plaintiff's weapon of choice." *Id.* at 4.

The Counsel therefore passed the Act to "ensure that District residents are not intimidated or prevented, because of abusive lawsuits, from engaging in political or public policy debates." *Id.* at 4. The Act creates "substantive rights with regard to a defendant's ability to fend off" SLAPPs. *Id.* at 1. The D.C. Council accomplished these goals through two primary mechanisms.

First, the law provides for a special motion to dismiss, which enables prompt rejection of meritless claims before unnecessary legal expenses pile up. D.C. Code § 16–5502. As explained infra, the D.C. Court of Appeals in *Mann* interpreted the special motion to dismiss provision as creating a standard akin to that applicable to a summary judgment motion under Federal Rule of Civil Procedure 56.

Second, the Act deters unscrupulous plaintiffs by permitting prevailing defendants to recover their attorney's fees and other costs. D.C. Code § 16–5504. Fee-shifting is a vital part of the substantive protection for SLAPP defendants, because it is the only way to reliably thwart one of the main goals of a SLAPP—

forcing the target to bear the significant costs of defending a lawsuit.  And fee-shifting is especially important for media defendants, whose limited budgets render them especially vulnerable to attack through litigation costs.  *See generally* Michael Barthel, *5 Key Takeaways about the State of the News Media in 2018*, Pew Res. Ctr. (July 23, 2019), https://perma.cc/DN54-YVEU (noting several troubling financial trends for the news media, along with few bright spots, in "another down year for the U.S. news media industry's economic fortunes").

Together, these provisions significantly reduce a plaintiff's motivation to file a frivolous suit, saving both the court and the defendant resources and protecting First Amendment rights.  As the Ninth Circuit has said, "It would be difficult to find a value of a 'high[er] order' than the constitutionally protected rights to free speech and petition that are at the heart of" anti-SLAPP statutes. *DC Comics v. P. Pictures Corp.*, 706 F.3d 1009, 1015–16 (9th Cir. 2013) (quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1155–56 (9th Cir. 2010)).

B.  News organizations frequently rely on anti-SLAPP statutes to fight back against meritless litigation filed in retaliation for reporting on <u>matters of public concern.</u>

Strong anti-SLAPP protections allow the news media to report on matters of public concern without fear of the expense, harassment, and disruption of meritless, retaliatory litigation.  News organizations frequently rely on anti-SLAPP statutes, including the Act, to obtain swift dismissal and to recover the

attorney's fees and other costs associated with responding to such lawsuits. Consider a few examples of cases in which D.C. defendants have invoked the statute to fight back against plaintiffs trying to silence them:

(1) In *TS Media, Inc. v. Pub. Broad. Serv.*, No. 2018-CA-001247-B, 2018 WL 2323233 (D.C. Super. Ct. May 15, 2018), plaintiffs sued PBS over the network's public statements that it had dropped the *Tavis Smiley* show because of "multiple credible allegations of sexual misconduct" against Mr. Smiley. *Id.* at *1. The D.C. Superior Court found that the plaintiffs were unlikely to succeed in proving that PBS acted with actual malice, and the court therefore granted PBS's special motion to dismiss under the Act. *Id.* at *3–*4.

(2) In *Jap Home Sols. v. Lofft Constr., Inc.*, No. 2017-CA-003390-B (D.C. Super. Ct. Nov. 29, 2017), plaintiffs sued reporter Jose Gallego Espina over articles published in the Spanish publication *El Español* concerning possible nepotism in Spain's government. Finding that the articles were true, the Court granted the reporter's special motion to dismiss and awarded attorney's fees under the Act.

(3) In *Moore v. Costa*, No. 2016-CA-4038-B, 2016 WL 8228980 (D.C. Super. Ct. Dec. 12, 2016), another defamation case brought by a Liberian official, the country's Minister of Public Works, W. Gyude Moore, sued Henry Costa over comments on various episodes of *The Costa Show* radio program questioning Mr.

10

Moore's motivations for entering certain contracts with Chinese companies. *Id.* at *1–*2. The D.C. Superior Court granted the defendant's special motion to dismiss and awarded him attorney's fees under the D.C. anti-SLAPP law.

(4) In *Boley v. Atlantic Monthly Grp.*, 950 F. Supp. 2d 249 (D.D.C. 2013), the D.C. District Court, before *Abbas II*, granted an anti-SLAPP special motion to dismiss defamation claims, in another case with similar facts to this one. George Boley, a former Liberian public official ultimately deported from the United States for alleged war crimes, sued *The Atlantic* and its reporter over two articles that called Boley a "warlord." *Id.* at 253–54. The defendants submitted public documents that showed both a lack of falsity and a lack of actual malice, and Boley "adduced no facts indicating that the 'warlord' statements were false or made with actual malice, offering only broad and conclusory denials of Goldberg's comments." *Id.* at 250. Because Boley failed to present any evidence of falsity and actual malice, the court granted the defendants' anti-SLAPP motion and dismissed his claims. *Id.* at 262–63.

(5) In *Farah*, 863 F. Supp. 2d at 31, *Esquire* published a blog post that satirized a group of "birthers"—people who questioned whether President Barack Obama was born in the United States and thus eligible to serve as President. The birthers in question, who had published a book entitled *Where's the Birth Certificate? The Case That Barack Obama Is Not Eligible To Be President*, sued

11

for defamation and interference with business relations.  But the D.C. District Court, before *Abbas II*, applied the Act and dismissed the case.  *Id.* at 36.

These examples are far from unique to D.C.  Anti-SLAPP statutes in other jurisdictions have likewise shielded valuable public reporting from baseless litigation.  Because of the national nature of modern print and digital publishing, these cases are often brought in federal court pursuant to diversity jurisdiction. Consider the following cases in which federal courts from across the country have dismissed claims under state anti-SLAPP laws.

(1)  In *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1140 (S.D. Cal. 2005), the Associated Press published unaltered photographs that showed "Navy SEALs potentially engaged in abuse of Iraqi prisoners."  The SEALs sued the Associated Press for invasion of privacy.  *Id.*  A federal court applied California's anti-SLAPP law to dismiss the case and to protect the Associated Press's "right of free speech."  *Id.* at 1149.

(2)  In *Thomas v. L.A. Times Commc'ns LLC*, 45 F. App'x 801, 802 (9th Cir. 2002), the *Los Angeles Times* published an article questioning the plaintiff's claims to have engaged in heroic exploits during and after the Second World War.  The plaintiff sued for defamation.  *Id.*  Invoking California's anti-SLAPP law, the district court dismissed the case, and the Ninth Circuit affirmed.  *Id.* at 802–03.

(3)  In *CanaRx Servs., Inc. v. LIN Television Corp.*, No. 1:07-cv-1482, 2008 WL 2266348, at *1 (S.D. Ind. May 29, 2008), a local broadcaster aired a news report raising concerns that a Canadian company had sold illegal and counterfeit pharmaceutical drugs in the United States.  The company sued the broadcaster for defamation.  *Id.* at *3.  The federal court applied Indiana's anti-SLAPP law to dismiss the case.  *Id.* at *9.

(4)  In *Armington v. Fink*, No. Civ-09-6785, 2010 WL 743524, at *1 (E.D. La. Feb. 24, 2010), the *New York Times Magazine* published an article suggesting that staff at a New Orleans hospital had euthanized patients in the aftermath of Hurricane Katrina.  The article won the Pulitzer Prize in Investigative Reporting, but it also prompted a defamation lawsuit.  The district court applied Louisiana's anti-SLAPP statute and dismissed the plaintiffs' claims.  *Id.* at *7.

Put simply, state anti-SLAPP statutes do more than protect freedom of speech in theory.  They do so in practice.  Time and again, these laws have protected media organizations and other speakers from retaliatory lawsuits seeking to suppress protected speech—in D.C. and elsewhere.  But because the protections of the Act do not currently apply in federal court, the threat of protracted litigation and the expense that comes with it could dissuade news organizations in D.C. from reporting on such matters, weakening public accountability and leaving citizens less informed.

## II. As interpreted by the D.C. Court of Appeals, the Act should apply in federal court.

In diversity cases, federal courts apply state substantive law and federal procedural law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1838); *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996). Federal courts exercising diversity jurisdiction engage in a two-step analysis, in sequence, to determine whether to apply a state law. *First*, courts ask whether a Federal Rule of Civil Procedure "answers the question in dispute." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). If so, the federal rule governs, so long as it does not violate the Rules Enabling Act. *Id.* *Second*, if no Federal Rule answers the question in dispute, the federal court must determine whether the state law is substantive within the meaning of *Erie*. *Id.* In doing so, it asks whether the state statute seeks to protect important substantive interests. The court looks to the "twin aims" of *Erie* in determining whether a state law is substantive: "the discouragement of forum shopping and the avoidance of the inequitable administration of the laws." *Hannah v. Plumer*, 380 U.S. 460, 468 (1965).

In *Abbas II*, this Court held that the Act does not apply in federal court, because it conflicts with Federal Rules 12 and 56 at the first step of the *Shady Grove* analysis. 783 F.3d at 1333–34. At the time the Court reached this conclusion, the D.C. Court of Appeals had not yet interpreted the Act. *Id.* at 1335.

Indeed, the Court acknowledged that if the D.C. Court of Appeals were to interpret the Act differently than how the Court predicted, that might change this Court's decision as well. *Id.* at 1335 n.3. The D.C. Court of Appeals subsequently interpreted the Act in *Mann*. 150 A.3d 1213. Based on a proper understanding of D.C. law, this Court should now hold that the Act applies in federal court.

The Court in *Abbas II* held that the Act conflicts with Rules 12 and 56 because the D.C. law and the federal rules both address the same question of "the circumstances under which a court must dismiss a plaintiff's claim before trial," but do so "differently." 783 F.3d at 1333–34. The Court rejected an argument that the "likely to succeed" standard that applies to the Act's special motion to dismiss was "functionally identical" to Rule 56's standard for summary judgment. *Id.* at 1334–35. Noting that "the D.C. Court of Appeals has never interpreted the D.C. Anti-SLAPP Act's likelihood of success standard to simply mirror the standards imposed by Federal Rules 12 and 56," the Court determined that "the D.C. Anti–SLAPP Act's likelihood of success standard is different from and more difficult for plaintiffs to meet" than the federal standard. *Id.* at 1335. But the Court left open the possibility that "if a State anti-SLAPP act did in fact exactly mirror" the federal rules, it could apply in federal court, allowing for the shifting of "attorney's fees and the like." *Id.* at 1335 n.3.

As the *Abbas II* decision acknowledged, the D.C. Court of Appeals is the highest authority on the meaning of D.C. law. Accordingly, this Court must follow the D.C. Court of Appeals' interpretation of D.C. law. *See Payne v. D.C. Gov.*, 722 F.3d 345, 353 (D.C. Cir. 2013) ("[O]ur analysis of the applicable District of Columbia statutes recognizes the District of Columbia Court of Appeals's interpretation as binding."); *see also Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) ("Our duty, then, is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case.").

In *Mann*, the D.C. Court of Appeals interpreted the Act's special motion to dismiss for the first time. The Act requires nonmoving parties, usually plaintiffs, to show that a claim is "likely to succeed on the merits" in order to survive a special motion to dismiss. D.C. Code § 16-5502(b). The D.C. Court of Appeals in *Mann* held that this likelihood of success standard was akin to summary judgment, asking "whether a jury properly instructed on the applicable legal and constitutional standards could reasonably find that the claim is supported in light of the evidence that has been produced or proffered in connection with the motion." 150 A.3d at 1232. Specifically addressing *Abbas II*, the court in *Mann* disagreed with this Court's conclusion that the Act creates a more difficult standard than Federal Rule 56, holding instead that "the question is substantively the same:

16

whether the evidence suffices to permit a jury to find for the plaintiff." *Id.* at 1238 n.32. In short, the D.C. Court of Appeals took this Court up on its invitation to interpret the Act's special motion to dismiss to "simply mirror the standards" of Rule 56. *Id.* The *Mann* court also held that the Act creates "a substantive right not to stand trial and to avoid the burdens and costs of pre-trial procedures." *Id.* at 1231.

The Court now must revisit *Abbas II* with the D.C. Court of Appeals' new, binding interpretation of the Act in mind. The special motion to dismiss provision mirrors Rule 56 and does not conflict with the federal rules. It is substantive within the meaning of *Erie*. The Act therefore applies in federal court.

A. Because it simply mirrors Rule 56, the Act's special motion to dismiss provision does not conflict with the federal rules.

The first step in the *Shady Grove* analysis is to determine whether a federal rule answers the question in dispute differently than state law. 559 U.S. at 398; *see also Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 (1980) ("The first question must therefore be whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court," creating a "direct collision" that "leave[s] no room for the operation of [state] law.").

Here, the Act's special motion to dismiss and Rules 12 and 56 answer the same question, but because they do so in the same way, there is no conflict between them. As the Court found in *Abbas II*, Rules 12 and 56 answer in which

17

circumstances a case can be disposed of before trial. *Abbas*, 783 F.3d at 1333–34.

Rule 56 allows for summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56. As interpreted by the D.C. Court of Appeals,

the Act's special motion to dismiss should be granted in the same circumstance—

when there is no issue of fact for the jury and the court can rule for the movant as a

matter of law. *Mann*, 150 A.3d at 1236. Because Rule 56 and the Act use the

same substantive standard, there is no conflict between them. They can therefore

operate together harmoniously in federal court.

Amici acknowledge that the D.C. Court of Appeals in *Mann* noted that the

Act's special motion to dismiss is "not redundant" of Rule 56. *Id.* at 1238.

Although the Act's standard is not more difficult than Rule 56, "it imposes the

burden on plaintiffs and requires the court to consider the legal sufficiency of the

evidence presented before discovery is completed." *Id.* at 1238 n.32. But neither

of these distinctions creates a conflict with the federal rules.

With respect to burden shifting, in practice the Act imposes the exact same

burden on the plaintiff substantively as Rule 56 in federal court, as interpreted by

the Supreme Court. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Under

Rule 56, the moving party's burden "may be discharged by 'showing'—that is,

*pointing out to the district court*—that there is an absence of evidence to support

the nonmoving party's case." *Celotex*, 477 U.S. at 325 (emphasis added). Once the moving party merely points out that insufficiency, the burden then shifts to the nonmoving party to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Act operates similarly and requires a plaintiff to make that same showing. The defendant bears the initial burden of making "a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest," after which the burden shifts to the responding party to show that the claim is likely to succeed on the merits. D.C. Code § 16-5502. As noted, the D.C. Court of Appeals in *Mann* interpreted that provision as requiring the plaintiff to show that "a jury properly instructed on the applicable legal and constitutional standards could reasonably find that the claim is supported in light of the evidence that has been produced or proffered in connection with the motion." 150 A.3d at 1232. At bottom, Rule 56 and the Act therefore impose the same standard: whether the plaintiff can show facts in the record upon which a reasonable jury can find in its favor. A federal district court would thus have no trouble applying the state and federal provisions in tandem.

As for Act's limitations on discovery, here too the federal and D.C. provisions are quite similar. When a motion for summary judgment is filed before discovery in federal court, Rule 56 and the Act are nearly identical. The Act stays

discovery upon the filing of a special motion to dismiss unless "it appears likely that targeted discovery will enable the plaintiff to defeat the motion and that the discovery will not be unduly burdensome." D.C. Code § 16-5502(c). Rule 56 is similar. It allows for the filing of a motion for summary judgment "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Where a nonmoving party shows that "it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(2). A court's decision to order additional discovery under Rule 56 is much the same as the decision to order targeted discovery under the Act. *See Godin v. Schencks*, 629 F.3d 79, 90–91 (1st Cir. 2010). The Act's special motion to dismiss provision therefore does not conflict with either Rule 12 or Rule 56.

B.  The Act's special motion to dismiss provision is substantive under <u>Erie.</u>

The second step in the *Shady Grove* analysis is to determine whether the state law is substantive within the meaning of *Erie*. To determine whether a law is substantive, courts look to *Erie*'s twin aims: discouragement of forum shopping and promotion of equal administration of justice.[2]

---

[2]  Because the Court in *Abbas II* found a conflict between the Act and the federal rules, it did not reach the question of whether the law is substantive under *Erie*. Therefore, any dicta in the *Abbas II* opinion labeling the Act procedural is not binding on this Court. *See, e.g., Abbas II*, 783 F.3d at 1335 (addressing

The D.C. Court of Appeals held in *Mann* that the Act creates "a substantive right not to stand trial and to avoid the burdens and costs of pre-trial procedures." 150 A.3d at 1231. That is consistent with the Act's legislative history, which presented the law as creating "substantive rights with regard to a defendant's ability to fend off" SLAPPs. Committee Report at 1.

The twin aims of *Erie* also show that the Act is substantive. If the Act does not apply in federal court, plaintiffs seeking to file frivolous suits as retribution for the defendant's exercise of their free speech rights will shop for a federal forum. Indeed, as *Global Witness* notes, Br. of Defs.-Appellees-Cross-Appellants at 60, the *Abbas II* decision has already led to forum shopping and inequitable justice, with two cases brought by the same plaintiffs challenging the same statements leading to different results in state and federal court. *Compare Fridman v. Bean LLC*, 2019 U.S. Dist. LEXIS 7874 (D.D.C. Jan. 15, 2019) (denying anti-SLAPP motion), *with Khan v. Orbis Bus. Intel. Ltd.*, No. 2018-CA-002667-B (D.C. Super. Ct. Aug. 20, 2018) (granting anti-SLAPP motion). The large number of related cases in the district courts likewise is a sign of forum shopping by SLAPP plaintiffs. That forum shopping deprives D.C. residents of the protections that the D.C. Council intended for them to enjoy.

---

whether the Act is substantive or procedural). Regardless, the D.C. Court of Appeals' decision in *Mann* requires this Court to reconsider that portion of the *Abbas II* decision as well.

Other circuits reaching this stage of the analysis have concluded that failing to apply anti-SLAPP statutes in federal court will lead to forum shopping and inequality in the administration of justice. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir.1999) ("Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum."); *see also Godin*, 629 F.3d at 81, 91 ("[W]ere [Maine's anti-SLAPP law] not to apply in federal court, the incentives for forum shopping would be strong: electing to bring state-law claims in federal as opposed to state court would allow a plaintiff to . . . circumvent any liability for a defendant's attorney's fees or costs.").

The Act's special motion to dismiss provision is thus substantive under *Erie*, and federal courts sitting in diversity must apply it.

## CONCLUSION

For the foregoing reasons, amici urge the Court to reverse in part and hold

that, in light of the intervening change in state law announced in *Mann*, the Act

applies in federal court.

Respectfully submitted,

/s/ Bruce D. Brown

Bruce D. Brown, Esq.
   *Counsel of Record for Amici Curiae*
Katie Townsend, Esq.
Caitlin Vogus, Esq.*
William Powell, Esq.*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1020
Washington, D.C. 20005
(202) 795-9300
bbrown@rcfp.org
*Of Counsel*

Dated:     March 18, 2020
          Washington, D.C.

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a) because this brief contains 5,346 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Bruce D. Brown
Bruce D. Brown, Esq.
*Counsel of Record for Amici Curiae*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

Dated: March 18, 2020
Washington, D.C.